```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF PUERTO RICO
```

_____
                                    )
JOSE G. RAMIREZ, JR.,               )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    CIVIL ACTION
                                    )    NO. 15-02141-WGY
UNUM PROVIDENT LIFE AND             )
ACCIDENT INSURANCE COMPANY,         )
                                    )
          Defendant.                )
_____)

YOUNG, D.J.[1]                                    December 7, 2016

## FINDINGS OF FACT, RULINGS OF LAW, AND ORDER FOR JUDGMENT

**I.   INTRODUCTION**

On August 20, 2015, Jose G. Ramirez, Jr. ("Ramirez") filed a complaint in the District Court for the District of Puerto Rico, alleging that Unum Provident Life and Insurance Company ("Provident") violated 29 U.S.C. § 1132(a)(1)(B) in denying Ramirez's benefits claim under a long-term disability insurance policy ("LTD policy"). Compl. 1, ECF No. 1. Provident timely answered on October 16, 2015. Answer, ECF No. 7.

On April 25, 2016, Ramirez and Provident filed cross-motions for summary judgment pursuant to Federal Rule of Civil

---

[1] Of the District of Massachusetts, sitting by designation.

Procedure 56(c).  Mot. Summ. J. ("Pl.'s Mot. Summ. J."), ECF No. 17; Mot. Summ. J. Administrative R., ECF No. 18.  The parties also submitted supporting statements of facts.  Statement Uncontested Material Facts ("Pl.'s Statement Facts"), ECF No. 15; Statement Uncontested Material Facts Supp. Mot. Summ. J. Administrative R. ("Def.'s Statement Facts"), ECF No. 19.  On May 27, 2015, Ramirez filed a memorandum in opposition to Provident's motion, Resp. Opp'n Mot. Summ. J., ECF No. 26, along with a counterstatement of facts, Counterstatement Material Facts ("Pl.'s Counterstatement Facts"), ECF No. 27.  Provident did not file a response or counterstatement of facts to Ramirez's motion for summary judgment.

With the agreement of the parties, the Court held a case stated hearing on November 14, 2016.[2]  It now makes the following findings of fact and rulings of law.

## II. FINDINGS OF FACT

Ramirez obtained the LTD policy at issue on January 1, 2002, while still employed by UBS Financial Services ("UBS"),

---

[2] The case stated procedure allows the Court to render a judgment based on the largely undisputed record in cases where there are minimal factual disputes.  In its review of the record, "[t]he [C]ourt is . . . entitled to 'engage in a certain amount of factfinding, including the drawing of inferences.'" TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007) (quoting United Paperworkers Int'l Union Local 14 v. International Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)).

Pl.'s Counterstatement Facts ¶ 4; Def.'s Statement Facts ¶ 4, as a financial analyst, Pl.'s Statement Facts ¶ 5. On August 21, 2013, Ramirez became disabled for health-related problems.[3] Id.; Pl.'s Statement Facts, Ex. 1, Individual Disability Claim Form Individual Statement, ECF No. 15-1. He never returned to work after that day. Pl.'s Counterstatement Facts ¶ 7; Def.'s Statement Facts ¶ 7. Ramirez ultimately was fired by UBS on January 23, 2014. Pl.'s Counterstatement Facts ¶ 9; Def.'s Statement Facts ¶ 9.

On February 20, 2014, two days after his 180-day elimination period ended, Ramirez filed a disability claim with Provident, requesting benefits under the LTD policy. Pl.'s Counterstatement Facts ¶¶ 7, 11; Def.'s Statement Facts ¶¶ 7, 11.

On May 14, 2014, the Financial Industry Regulatory Authority ("FINRA") suspended Ramirez's broker's license, effective on June 9, 2014, for failure to cooperate with its internal investigations. Pl.'s Counterstatement Facts ¶ 13;

---

[3] Ramirez's attending physician, Dr. Juan Fumero-Perez, examined and diagnosed him with general anxiety disorder and major depression on December 26, 2013. Def.'s Statement Facts, Ex. A1, Individual Disability Claim Form Attending Physician Statement ("Attending Physician Statement") 105, ECF 19-1. Medical reports in the court records show that Ramirez had received treatment for those same conditions at least as early as October 7, 2003. Id.

Pl.'s Statement Facts, Ex. 2, Letter from FINRA to Ramirez's counsel, Guillermo Luina, dated May 14, 2014 1, ECF No. 15-2; Def.'s Statement Facts ¶ 13.

On June 12, 2014, Provident sent a letter to Ramirez informing him that, although it had not reached a final decision regarding his benefits claim, it would pay him benefits under a reservation of rights while it completed a review of his claim. Pl.'s Counterstatement Facts ¶ 11; Pl.'s Statement Facts, Ex. 4, Letter from Provident to Ramirez dated June 12, 2014 ("June Letter") 1, ECF No. 15-4; Def.'s Statement Facts ¶ 11.

On November 13, 2014, Provident sent a letter to Ramirez denying his benefits claim under the LTD policy because Provident understood that Ramirez's disability was the result of his "legal issues and resulting termination from employment and loss of license."[4]  Pl.'s Counterstatement Facts ¶ 15; Pl.'s Statement Facts, Ex. 6, Letter from Provident to Ramirez dated November 13, 2014 ("November Letter") 2, ECF No. 15-6; Def.'s Statement Facts ¶ 15.  Ramirez appealed that decision on May 8, 2015.  Pl.'s Counterstatement Facts ¶ 17; Pl.'s Statement Facts,

---

[4] The "legal issues" -- which had been mentioned by many physicians who examined and diagnosed Ramirez -- refer to the many client complaints about Ramirez during his employment at UBS.  Pl.'s Counterstatement Facts ¶ 9; Def.'s Statement Facts ¶ 9.

Ex. 8, Letter from Ramirez's counsel to Provident dated May 8, 2015 1, ECF No. 15-8; Def.'s Statement Facts ¶ 17.

On July 1, 2015, Provident sent a letter to Ramirez informing him that his appeal had been denied. Pl.'s Counterstatement Facts ¶ 19; Pl.'s Statement Facts, Ex. 10, Letter from Provident to Ramirez dated July 1, 2015 1, ECF No. 15-10; Def.'s Statement Facts ¶ 19.

**III. RULINGS OF LAW**

The Court makes rulings of law on two issues: (i) whether Provident had previously waived the exclusion it relied on to deny Ramirez's benefits claim, and (ii) whether Provident correctly applied that same exclusion when it denied Ramirez's benefits claim under the LTD policy.

    **A.   Legal Standard**

Because the LTD policy does not give Provident discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court reviews Provident's decision to deny Ramirez benefits de novo, see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  In doing so, the Court gives no special deference to the opinion of Ramirez's treating physician.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003); Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 526 (1st Cir. 2005); Diaz v. Metro. Life Ins. Co., 688 F. Supp. 2d 49, 61 (D.P.R. 2010) (Besosa, J.).

**B.    Exclusion Waiver**

> The LTD policy defines total disability as follows:
>
> Total Disability, or totally disabled, means that, due to Injuries or Sickness:
> 1. you are not able to perform the substantial and material duties of your occupation;
> 2. you are not working in any other gainful occupation; and
> 3. you are receiving the care of a Physician which is appropriate for the condition causing your disability and which is intended to help you return to work in your occupation.  We will waive this requirement when we are furnished proof, satisfactory to us, that continued care would no longer be of benefit to you.

Pl.'s Statement Facts, Ex. 7, Disability Income Policy ("Policy") 7, ECF No. 15-7.  The LTD policy also includes the following exclusions from coverage:

> 1. loss caused by any act of war, whether war is declared or not;
> 2. loss caused by intentionally self inflicted injuries;
> 3. loss caused solely by the suspension, revocation or surrender of your professional license to practice in your occupation;
> 4. any period of time within a period of disability during which you are residing outside of the United States or Canada for more than 12 months, unless we agree otherwise in writing;
> 5. any loss to which a contributing cause was your commission of or attempt to commit a felony, or your being engaged in an illegal occupation; or
> 6. loss we have excluded by name or specific description (any such exclusion will appear in the Policy Schedule).

Id. at 12.  In the June Letter granting Ramirez benefits under a reservation of rights, Provident referred explicitly only to exclusion number 5.  June Letter 3.  In its November Letter, however, Provident cited exclusion number 3 in its decision denying Ramirez's benefits.  November Letter 3.

[6]

Ramirez argues that Provident's failure to raise this second exclusion in the June Letter waived Provident's right to later use that exclusion as the ground for denying Ramirez benefits under the LTD policy.  Pl.'s Mot. Summ. J. ¶¶ 2.9-2.13.

Although the First Circuit is silent on this specific issue, other circuits have recognized that where an insurance company "relies on specific grounds <u>for denying</u> a claim [it] thereby waives the right to rely in subsequent litigation on any other grounds which a reasonable investigation would have uncovered," <u>Hydro Sys., Inc.</u> v. <u>Continental Ins. Co.</u>, 929 F.2d 472, 475 (9th Cir. 1991) (alteration in original) (emphasis added) (quoting <u>McLaughlin</u> v. <u>Connecticut Gen. Life Ins. Co.</u>, 565 F. Supp. 434, 451 (N.D. Cal. 1983)); <u>see also</u> <u>Luria Bros. & Co.</u> v. <u>Alliance Assurance Co., Ltd.</u>, 780 F.2d 1082, 1090 (2d Cir. 1986).

Even were this Court to accept this line of precedent, it does not follow that Provident waived the exclusion upon which it relied to deny Ramirez benefits.  Under the cited authorities, waiver applies only when the insurance company tries to raise exclusions different from those it relied on to <u>deny</u> a benefits claim.  Ramirez does not point to case law holding that an insurance company cannot deny a claim based on an exclusion to which it simply failed explicitly to refer in

prior communications with the policy holder, when that exclusion is part of the policy at issue.

In its June Letter, Provident did not <u>deny</u> Ramirez's claim -- it explicitly stated that Ramirez's claim was still under review.  The Court, thus, rules that Provident has not waived the exclusion it used to deny Ramirez benefits in its November letter.

### C. Exclusion Application

As noted above, in its November Letter, Provident denied Ramirez's benefits claim under the LTD policy because it understood that his disability was the result of his legal issues, termination, and ultimate loss of license.  November Letter 3.  Ramirez argues that Provident incorrectly applied the exclusion because his inability to work antedated the revocation of his license.[5]  Pl.'s Mot. Summ. J. ¶ 2.13.

Both Ramirez and Provident admit that Ramirez's health-related incapacitating disability started <u>before</u> he lost his broker's license.[6]  See Pl.'s Statement Facts ¶ 5; Pl.'s

---

[5] The LTD policy provides: "We will not pay benefits for . . . loss caused <u>solely</u> by the suspension, revocation or surrender of your professional license to practice in your occupation."  Policy 12 (emphasis added).

[6] Both physicians from Provident who examined Ramirez, Dr. Peter Brown and Dr. Lloyd Price, agreed with Ramirez's attending physician's conclusion that "[t]he precipitating and perpetuating causes of [Ramirez]'s [health-related disability] [we]re the ongoing stress of multiple client complaints, being

Counterstatement Facts ¶ 11; Def.'s Statement Facts ¶ 11. Accordingly, what is in dispute here is the correct interpretation of the terms of the LTD policy, i.e., whether Ramirez's disability falls within the exclusion on which Provident relied to deny Ramirez's benefits claim.  This is matter of law, not fact.  See Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc., 820 F.3d 36, 41 (1st Cir. 2016) (citing Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 72 (1st Cir. 2007)).

In order to interpret the policy's exclusionary language, the Court refers to local law.  See Littlefield v. Acadia Ins. Co., 392 F.3d 1, 7 (1st Cir. 2004); CWC Builders, Inc. v. United Specialty Ins. Co., 134 F. Supp. 3d 589, 597 (D. Mass 2015) (Woodlock, J.); Nahan v. Pan American Grain Mfg. Co., Inc., 62 F. Supp. 2d 419, 423 (D.P.R. 1999) (Dominguez, J.) (citing United States Fire Ins. Co. v. Producciones Padosa, Inc., 835 F.2d 950 (1st Cir. 1987)).  Under Puerto Rican law, insurance policies are considered contracts of adhesion, and consequently, they ought be liberally construed to protect the insured.

---

terminated for misconduct and the associated legal proceedings." Pl.'s Statement Facts, Ex. 9, Dr. Peter Brown Activity Report ("Dr. Brown Activity Report") 3, ECF No. 15-9; accord Pl.'s Statement Facts, Ex. 5, Dr. Lloyd Price Activity Report ("Dr. Price Activity Report") 1-2, ECF No. 15-5.  In particular, Dr. Brown explicitly agreed with Ramirez's attending physician's conclusion that Ramirez suffered from disabling anxiety and depression on August 21, 2013.  Dr. Brown Activity Report 3.

Maderas Tratadas v. Sun Alliance Ins. Co., 185 D.P.R. 880, 898-99 (P.R. Sup. Ct. 2012); Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 155 (P.R. Sup. Ct. 1996).  Any doubts regarding the disability benefits exclusions in insurance policies must be resolved in favor of the insured.  See Maderas Tratadas, 185 D.P.R. at 899.

    Here, the exclusion upon which Provident relies is unambiguous.  It provides that benefits will not be paid for "loss caused solely by the suspension, revocation or surrender of your professional license to practice in your occupation."  Policy 12 (emphasis added).  Under the most plausible interpretation of such exclusion, the insurer need not pay benefits to the insured for a loss suffered solely due to the suspension or loss of the insured's professional license.  The medical records here show that Ramirez's disability commenced at least as early as August 21, 2013 -- potentially even earlier.  Attending Physician Statement 105; Dr. Brown Activity Report 3; Dr. Price Activity Report 2.  Ramirez had his license suspended on May 14, 2014; thus, his loss could not have been caused -- let alone solely caused -- by the suspension or loss of his professional license pursuant to the LTD policy.  Accordingly, the Court rules that Provident mistakenly interpreted the LTD policy in denying Ramirez's benefits claim.

IV. **CONCLUSION**

For the foregoing reasons, the Court finds and rules that Ramirez is entitled to benefits under his LTD policy. Judgment will enter for Ramirez.

**SO ORDERED.**

/s/WILLIAM G. YOUNG<br>
WILLIAM G. YOUNG<br>
DISTRICT JUDGE